Ms. Niebarger, you're a law student, correct? Yes, I am, Gonzaga Law School. We appreciate your work on the case and also your supervising attorney who's here with you. Okay, with the case set for 10 minutes per side, so please proceed. Good morning, Your Honors. May it please the Court, I am Megan Niebarger for the appellant, Ms. Teresa Palomares. This is my supervising attorney, Professor Jennifer Gelner. I would like to reserve two minutes for rebuttal. The standard of review is de novo. The facts are not in dispute, and this is a question of mixed fact and law. Ms. Palomares has met the requirements of the informal claim doctrine, and under Code Section 6511 and by regular operation of IRS procedures, she should receive refunds back two years from the date of her original claim, the Form 8379, Injured Spouse Form. Ms. Palomares met the requirements from the three-part test set forth by the tax court in Jackson v. Commissioner. A request must be in writing. In addition, the writing, in conjunction with the surrounding circumstances, adequately notifies the service of the refund claim and the basis of the claim, and the taxpayer perfects the claim before the rejection of the informal claim. The writing here is satisfied by the Form 8379, Injured Spouse Form. The surrounding circumstances provided the IRS with adequate notice. When you talk about surrounding circumstances, what are you talking about? Well, the surrounding circumstances are that there's no doubt Ms. Palomares was claiming a refund, as the Form 8379 is a request for a refund. She was clearly trying to obtain the refund that she did not receive. It is evident that Ms. Palomares was claiming the refund because the Form 8379, Injured Spouse, was not filed with a joint return. What's the difference between an injured spouse and an innocent spouse? Can I finish my question? For the purpose of the Internal Revenue Code. The injured spouse claim is when you are married and your spouse has a liability, and you don't want that liability to affect your refund. You would file a form to protect your refund. And then the innocent spouse is when you are separated, and you would like your refunds back that are being applied to a joint liability from when you were married. Go ahead. So because there was not a joint return filed, the 8379 could not be valid. When you saw the injured spouse return, or refund claim, did that alert the IRS that she was really seeking a? Yes, Your Honor, because when she filed the 8379, it was not with a joint return. To file an 8379, she would have had to have had a joint return. They could see that she had the 1996 tax liability, and that she was requesting a refund. She just used the wrong form. They had to know that because they had been keeping her overpayments. Right. They applied her 2006 and 2007 refunds to this joint liability from 1996. Isn't the real problem here, though? I mean, even if you say that the 8379 form qualifies, and the surrounding circumstances alerted the IRS, that by the time she gets around to filing the 8857, they've already denied her return. The 8379, when it was filed, it was already invalid because there was no joint return. So when the IRS denies the 8379, there really is no claim for injured spouse. There is a claim for innocent spouse, and they did not deny innocent spouse. They denied an invalid injured spouse. What legal authority places a burden upon the Internal Revenue Service when someone files an incorrect form where there are surrounding circumstances that there might be a more appropriate form to be filed? Is there a burden on the service to have told your client, you can't file this one because it goes against a joint return, but you may have a basis for innocent spouse. That's a different form. If you'll fill that one out, we'll process your application. Were they under any obligation to do that? They were not under an obligation to do that, but they did send a letter stating that they knew she was intending to file an innocent spouse and sent her the form. They aren't required to do that, but by operation of regular IRS procedures and under Code Section 6511, when 8379 is filed, they look for the joint return. Upon not seeing that, they knew that it was an innocent spouse since it was a claim for refund. So they sent her a letter telling her what you really need to file is this other form for innocent spouse, and if you'll do that, we'll process it. Yes. Correct? Yes, Your Honor. So what did they do wrong after that? So Ms. Palomaris did not speak any English at the time, and so when she received the letter, she did not understand what it was saying, but. . . She eventually files it. She does, yes. She gets more help and eventually is able to file. Right. And she perfects her claim, which is the last part of the test from Jackson. Counsel, how long did she delay filing the correct form after she received the letter saying you may want to file an innocent spouse form? What period of time passed? She filed her injured spouse claim in 2008 and then did not file her innocent spouse claim until 2010. Okay, but in 2008 when she filed her injured spouse claim, then when was it that she got the IRS letter saying you may want to file under this other form? It was in 2008, so it was a few months after. So she waited a couple of years. Yes. And what she's suing now is to get the refunds that she can't get because of operation of a limitation spirit? Yes. We're saying that the claim 8379 was the original claim for innocent spouse, and so the refunds should go back two years from that date of claim. That would get her what? Which period of . . . So she filed the 8379 in 2008. It should go back two years to 2006. In 2007. Yes, in 2007. How much money are we talking about? How much is that? $7,000. I guess to her that's a significant amount of money. Yes, it is quite some of money. Want to save some time? Yes, thank you. Thanks, counsel. We'll hear from the government. May it please the Court. I'm Regina Moriarty, and I represent the Commissioner of Internal Revenue. The tax court in this case correctly held the taxpayer was barred by Section 6511 from obtaining the refunds of overpayments for 2006 and 2007. There's no question in this case that the circumstances were unfortunate. And, in fact, when the IRS first found out about these circumstances in 2010, it looked at them and it granted the taxpayer here innocent spouse relief. But it was bound by the statute of limitations in 6511. It can only reach back so far. It can only go back two years. In order to go back further, you would have to adopt this argument that they're making here today. That's correct. And there are multiple problems with that. If you just start by looking at the form itself, the 8379, there's absolutely no information on there. If you compare the two forms, the 8379 and the 850. Is there anything in the record that shows how she came about to file the 8379 to begin with? The transcript indicates that she was working with the Northwest Justice Center. And they came up with the idea that you need to file 8379? She was working with an attorney whose name I believe was Parker Parsons. And, in fact, she was working with him, according to the transcript, through 2008, 2009, and 2010. He was helping her with her divorce and child custody dispute as well. And so that was who assisted her in filling out the form. If you look at the form, and it's on ER 94, right at the top of the injured spouse form, the 8379, of course, it says, see the instructions. And there are only two pages of instructions, so it's pretty brief. But those instructions ask you a question. Are you an injured spouse? And then it tells you what one is. And then further down the page, it says, innocent spouse relief. Do not file this form if you are claiming innocent spouse relief. So to the extent that they made the argument that the form was changed and whatnot, I think the IRS routinely looks at their documents and forms and tries to improve them. But this form in and of itself was clear as to what the relief, what you filed the form for. And in this case, when the IRS received the form, on the transcript, the account transcript, was probably the first place the IRS would go, and that's on ER 97. It lists her filing status as head of household. That in and of itself would tell the IRS that injured spouse allocation is not the proper form to be filing. And so the IRS pretty quickly turns that around and sends her a letter back telling her, you don't qualify for that relief. Because if they looked at that same transcript for 2007, which was the only year that was listed on the injured spouse form, it tells you where that refund was sent, and it tells you it went to 1996. That does not in any way mean that the IRS would go back and look at the 96 return and see any of that. But the IRS went a step further and said, here's the form that you might need to mean to be filing. They had no idea because in 2008. Do they do that? Routinely. Is that a common practice? I mean, it seems like there must have been some information in their files that alerted them that this is really what she needed to do. Well, in 2008, when they received this form, they had no idea that she didn't speak or understand English. They had no idea that she was experiencing any type of financial hardship. They didn't know that the tax debt for 96 was due only to her husband's income, and they didn't know she had experienced any other hardship and domestic issues. All they knew at that time was that she was filing this form asking for a refund. I don't know if they would routinely send that out or not. In this case, they knew she wasn't entitled to the injured spouse allocation relief because she hadn't filed a joint return for that year. So in your estimation, it's just that she'd been her returns, where she'd gotten the refund on her own account, had been filed as head of her own household. Is that right? A single or whatever. Yeah, she filed her returns for later years as head of household, and her withholding was more than the tax liability for those years. And so under 6402, it's proper for the IRS to take those amounts and apply them to a tax debt that she lawfully was liable for at that time. She had signed the joint return with her husband, and it was a 96 return. It was filed in 1999. And so at that time, she was liable for that tax debt. It wasn't until 2010 when the IRS knew all of her circumstances that it granted her the equitable relief of innocent spouse treatment. So is it the IRS's position that the 8379 form couldn't serve as the first step in the equitable analysis? It could not serve as an informal claim for refund for innocent spouse relief in this instance because it didn't have any of the information on that it would need. The informal claim doctrine is used when there's, you know, one or two minor things wrong with your claim, and you come back at a later time and you correct those. And in this case, not only was all of that information that one would need to make an innocent spouse determination missing from that form, it was then denied by the IRS in September of 2008. And so at that point, there was no claim that could be perfected in 2010. Once a claim is disposed of, you can't come back and later amend it. You're talking about the letter, again, referring to the 8379 form that they sent out on September 24, 2008. Right, because the letter says, you do not qualify for your refund. And then it explains why, because that was used to offset a debt that you had outstanding. They're clearly saying you don't qualify for injured spouse relief. Right? Well, it says, we received your injured spouse allocation. We have determined you do not qualify for the refund. Right. Because you didn't file a joint return for that year. But when you go back to look at the 8379, there's absolutely nothing in that. And they say you may have intended to file Form 8857 for the innocent spouse relief. Right. And they're courtesy. The IRS doesn't know at that time because they're saying may. They don't know. No. Because they have no information from the taxpayer. The form she filed was totally lacking in any of the information that you need to provide to the IRS when you seek innocent spouse relief. Can we speculate reasonably that that was a form letter? And what I'm getting at is this wasn't the first time this has happened in the entirety of taxdom, right? I would assume not. But there also are probably countless others that filed the correct form in the correct circumstances. And no one is suggesting that the IRS is somehow responsible for the gap, the two-year approximate gap that occurred. Right. But it sounds like that letter is fairly commonly sent when someone sends in injured spouse when they really mean innocent spouse. I wouldn't venture a guess on to how often that could happen. I think the forms that attach that, the instructions that attach that form are pretty clear. Do not file this if you're an innocent spouse. Anyway. No rule says you have to use all your time. No. I just want to make one or two more quick points because I do see them. He's trying to seek a refund for both 2006 and 2007. It's the position of the IRS that 2006 can't come into play in any circumstances here because the 8379 never mentioned that 2006 tax year. If that is the informal claim. Well, the informal claims. If you treat it as. I mean, didn't the tax court say this could qualify as an informal claim? No, they specifically held that it was not. I must be reading. I must be confusing. I mean, I think what you're asking is could somebody fill this form out and provide enough information? It doesn't matter that it's one form or the other because you can submit a claim for refund in any kind of writing. I mean, the IRS has all kinds of forms. Counsel, what is the information, please, that you feel was missing from the 8379 form that would be necessary to get the innocent spouse relief? She would had to have stated. I got all my notes. That she filed a joint return with her husband. She didn't think she was liable for that amount. The reason she wasn't liable for that amount was because it was a tax based on her husband's income, not hers. She suffers a financial hardship right now. And it would be inequitable to hold her liable for that. So she had, in substance, said, made those points poorly, then she could get the relief. It would have been viewed as a valid claim for refund for innocent spouse relief, not a claim for injured spouse allocation. Thank you, Counsel. Thank you. Can we thank the government then? We have a potential rebuttal from Ms. Niebarger. I think, from my sole perspective, as one judge, it would help me if you could explain how, in your view, the 8379, in substance, communicated the central points that your friend on the other side of the case has said had to be there. Right. So what we're saying is that it is all of the surrounding circumstances showed the IRS that she was claiming innocent spouse. There was no joint return. They knew that it was not injured spouse. She was claiming it for a refund from the 96 liability. That meant that the only option was innocent spouse. And they also sent the letter to request more information. But did she give the grounds for innocent spouse relief? No, she later perfected the claim with all of the later details. And then, also, I just wanted to let the record reflect that there was an attorney for the 8857, but it was a volunteer who helped her file the 8379. And then, also, the forms are just very confusing, which is another surrounding circumstance. The IRS is aware of this. They had to change the forms. Here today, we had to talk about it because it is such a confusing concept. And so when they got this wrong form, they were aware of what was happening. And then, also, the letter that they sent her was not a form letter. There was no joint liability, and they had to explain that. Okay. So Ms. Palomaris is entitled refund stating back two years from the date of the injured spouse claim because it meets the requirements of the informal claim doctrine. Ms. Palomaris filed a writing, clearly requested a refund, and the IRS was adequately put on notice. The court should rule in our favor. We request the previous court ruling be overturned. Thank you, counsel. It was well presented on both sides, and we appreciate the travel and argument from Ms. Niebarger and her supervising attorney, Professor Gelner, and from Ms. Moriarty on behalf of the government. So we're glad we got a nice day for you to see Seattle. Have safe trips home. In the case of Palomaris v. Commissioner of Internal Revenue, 1570659 shall now be submitted, and the court will take a recess for 15 or 20 minutes, let's say 15 minutes before resuming on the final two cases.
judges: Hawkins, Gould, Paez